L. WOLFF MANUFACTURING COMPANY

v.

DAVID J. WILSON, BY NEXT FRIEND, ETC.

*Master and Servant—Negligence of Servant—Liability of Master— Imminent Peril—Contributory Negligence—Special Findings.*

1.   One sued for damages, the result of his negligence, can not protect himself by showing that the negligence of some other person contributed in an equal or greater degree to the injury.

2.   Where two persons are negligent, and the accident would not have occurred but for the negligence of both, the person injured may proceed against either.

3.   There is no such thing as ordinary care when a person is suddenly and unexpectedly exposed to imminent peril of sudden death, and action on his part must be with all the speed he is capable of.   If such person misjudges and fails to do that which was best and is thereby injured, such misjudged action upon his part will not be considered negligence.

4.   Ordinary care is that degree of care which it is to be presumed an ordinarily careful and prudent person would exercise in the same relations, and under the same circumstances.

5.   It is too late to raise the question as to whether a juror when being examined did or did not state that he was acquainted with one of the parties to a given suit, upon appeal; an attorney is entitled to a clear and distinct reply to such question at the time the same is asked.

6.   Questions which the jury may be called upon to specially answer should be restricted to those ultimate facts upon which the rights of the parties directly depend.

[Opinion filed November 17, 1892.]

APPEAL from the Circuit Court of Cook County;  the Hon. FRANK BAKER, Judge, presiding.

The appellee in this case was injured by the falling of an iron post standing upon the sidewalk in Chicago; this post was painted and used as a barber sign, and presented the appearance of wood; it was not properly braced or fastened to the walk. The evidence shows that the post was eighteen inches in diameter at the bottom, ten to twelve feet high and weighed from 500 to 800 pounds. This post was hit by the truck of defendant company, which was being backed around in the usual way to unload some goods. The outer edge of the post was within and about five inches from the outer edge of the sidewalk. The post not being properly fastened, fell over to the walk and struck plaintiff, injuring his leg.

Messrs. WALKER & EDDY, for appellant.

Mr. F. M. WILLIAMS, for appellee.

MR. JUSTICE WATERMAN. It is not claimed by appellant that the falling of the post was caused by any mere jar; it is admitted that the body of appellant's wagon projecting over the sidewalk struck the post and made it fall; but it is insisted that the servant of appellant in charge of its wagon was using all due care and caution, and that there is no evidence showing any want of care upon his part. If from the evidence we could draw the same conclusion as does the learned counsel for appellant, we should come to the same result. We agree with him in nearly all that he says as to the law governing this case, and certainly with his insistance that there must be in the record of this case some evidence of negligence upon the part of appellant, or the judgment can not be sustained.

We are also in accord with appellant in the opinion that the evidence discloses a high degree of negligence upon the part of the barber who placed the pole in so insecure and unsafe a position, greater, perhaps, than was that of the servant of appellant; and it may be that appellee might, as is

Wolff Mfg. Co. v. Wilson.

urged, have brought suit and recovered judgment against the barber. The evidence, however, is, that notwithstanding the negligence of the barber, appellee would not have been injured but for the additional negligence of appellant.

One sued for damages, the result of his negligence, can not protect himself by showing that the negligence of some other person contributed in an equal or greater degree to the injury.

It is quite likely that appellee elected to bring suit against appellant instead of the barber, because appellant is a wealthy corporation and the barber is not thought to be rich, but such election is one of the most commonly exercised and most indisputable of rights.

It seems to us clear that the servant of appellant was guilty of negligence in swinging his team about and backing up so that the body of his wagon projected over the sidewalk. The sidewalk is not made for the use of wagons. It is set apart for pedestrians. If the body of a wagon may be properly projected over a sidewalk the distance of five inches, we are unable to determine where the line shall be drawn at which such projection ceases to be due care and becomes negligence. If, instead of striking this post, the wagon had struck appellee and broken his leg, as he was walking upon this sidewalk, could he not have recovered damages from appellant? If a portion of the sidewalk may be occupied by a wagon body, what portion is subject to such use?

In the case of Dunham Towing & Wrecking Co. v. Daudelin, 41 Ill. App. 175, the right of a schooner moving along a strip of the Chicago river to project a boom over the dock line, and the responsibility of its owners for an injury thus occasioned, was considered. We there said: "When the jib boom of the vessel projected over the dock line and struck the elevator, it was in a position where it had no right to be, and where appellant in endeavoring to move the schooner out, had no right to place it."

So here we say, when the body of appellant's wagon projecting over the sidewalk struck this post, it was in a posi-

tion where it ought not to have been, and where appellant had no right to place it.

Counsel say that there is not a "scintilla of evidence that the wagon struck with great force and violence the barber's post." It appears that appellant's servant was driving a pair of horses, and used them to back a wagon having on it a load which he estimates at fifteen hundred pounds; that in twisting around, his wagon struck this post, and it was thus knocked over. All this was shown by appellant. The expression "great force and violence" is not a definite one; the description of the stroke given by appellant's driver would indicate a good deal of force, something more than the "mere brush" of which counsel speaks.

Appellant, by its counsel, requested the court to submit to the jury the following special findings of fact:

"First. Do you find from the evidence that the pole was not properly and securely fastened to the walk, and that the accident was the natural and probable consequence of the negligence of the owner of the pole, and not the result of any negligence on the part of the driver?

Second. Do you find that the driver, in managing his truck and horses, and in backing around, exercised the care of an ordinarily prudent man, under the circumstances?

Third. Do you find from the evidence that the plaintiff, when the pole was falling, and before it reached him, held up his hands, either to catch it, or for any other purpose, and that by the exercise of ordinary care he could have stepped to one side or remained at one side, and so avoided being injured?"

The refusal of the court to submit the first and third of these is said to have been error.

As to the first, appellee had nothing to do with the placing of the pole where it was, or with fastening it to the walk; he was in no way responsible for the condition in which the pole was; why, then, should the jury be called upon to render a verdict upon the conduct of some one not a party to the suit?

Counsel for appellant say that the third asked the jury to

find whether the plaintiff, under the circumstances, exercised ordinary care.

If this be so, then it should have stated the circumstances under which, if at all, the plaintiff, when the pole was falling, held up his hands to catch it. If the plaintiff did hold up his hands to catch the pole, and his so doing was material, then the fact, testified to by appellant's driver, that "he called to the boys to catch the post," would also be material. The mere finding of the jury under such circumstances, that the plaintiff held up his hands to catch the post, would not be decisive.

In C. & N. W. Ry. Co. v. Dunleavy, 129 Ill. 132, the Supreme Court say: "Questions which the jury may be called upon to specially answer, should be restricted to those ultimate facts upon which the rights of the parties directly depend." See also same case in 27 Ill. App. 438, and C. & N. W. Ry. Co. v. Bouck, 33 Ill. App. 123.

But is the question of whether the plaintiff, under the circumstances, exercised ordinary care, involved in this question? That is to say, was the plaintiff, when the pole was falling and before it reached him, bound to exercise ordinary care?

Negligence, the Supreme Court of this State say, citing approvingly the definition of Alderson, B., in Blyth v. Burmingham Works Co., 11 Exch. 784, "is the omission to do something which a reasonable man, guided upon those ordinary considerations which do ordinarily regulate the conduct of human affairs would do, or doing something which a prudent and reasonable man would not do." C. B. & Q. R. R. Co. v. Johnson, 103 Ill. 512.

Slight negligence is consistent with the exercise of ordinary care. Ordinary care may then well be defined to be that degree of care which it is to be presumed an ordinarily careful and prudent person would exercise in the same relation and under the same circumstances. 16 Am. & Eng. Encyc. of Law, 402.

So, in this case, the question whether, when the plaintiff saw the post falling, he exercised ordinary care, is whether

he, thus suddenly and unexpectedly placed in a position of imminent peril, did what it is presumed an ordinarily careful and prudent man would have done under the same circumstances.

There is no experience by which such a question can be answered. Quite likely, never before were the circumstances like this. Ordinarily prudent men do not usually knowingly place themselves in positions of great peril; to do so is not, under ordinary circumstances, the exercise of ordinary care. But there is no rule and no test of experience to determine what ordinarily prudent and careful men do when, as they are standing upon the sidewalk, they suddenly and unexpectedly perceive an iron post weighing six or more hundred pounds falling upon them. With the facts of this accident before us, it is impossible for a jury, a court, or a careful man to say what would be the most prudent thing for the plaintiff to do the next time he is threatened in the same way.

If the plaintiff, knowing the dangerous condition of this post, had voluntarily placed himself where it might fall upon him, he might be said, in so doing, not to have exercised ordinary care; but there is no such thing as ordinary care when a person is suddenly and unexpectedly exposed to imminent peril of instant death, and action upon his part must be with all the speed he is capable of; the situation is extraordinary, unusual, and there is neither rule nor experience for determining what ordinary care at such a time is; the care taken in such an emergency is never ordinary; it is always unusual and exceptional; the most prudent person may, under such circumstances, do the most unwise thing, and the reckless may jump to the best conclusion and action.

It may well be said that a party so suddenly and unexpectedly threatened, obliged to act instantly, should do that which seems to him most prudent; but it is well settled that if he misjudges and fails to do that which was best and is thereby injured, such misjudged action upon his part will not be considered negligence. C. & A. R. R. Co. v. Becker, 76 Ill. 25; Dunham T. & W. Co. v. Daudelin,

Illinois Supreme Court; Karr v. Parks, 40 Cal. 188; Moore v. Chicago R. Co., 47 Ia. 688; Frandsen v. Chicago R. Co., 36 Ia. 372; Lowery v. Manhattan R. Co., 99 N. Y. 158; N. C. St. R. Co. v. Louis, 35 Ill. App. 477.

As to whether the juror Ohman, upon his *voir dire,* answered yes or no when asked if he knew the Wolff Manufacturing Company, there were conflicting affidavits. We not only can not say that the court should have, upon them, set aside the verdict, but do say that if the juror did not answer in so clear and distinct a manner as that there could be no mistake as to his declaration, then appellant's counsel had a right to have such an answer, and can not now complain of what would not have happened had he insisted upon his rights.

The judgment of the Circuit Court is affirmed.

*Judgment affirmed.*