(No. 469

DONALD LINDSEY, CHRISTINE LINDSEY, PATRICIA LINDSEY, BY CHRISTINE LINDSEY, HER MOTHER, NATURAL GUARDIAN AND NEXT FRIEND, AND BARBARA LINDSEY, BY CHRISTINE LINDSEY, HER MOTHER, NATURAL GUARDIAN AND NEXT FRIEND, Claimants, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed November 10, 1959.*
*Judge Wham dissenting.*

JACOBSON AND JACOBSON AND WILLIAM SULKIN, Attorneys for Claimants.

LATHAM CASTLE, Attorney General; RICHARD F. SIMAN AND LESTER SLOTT, Assistant Attorneys General, for Respondent.

TOLSON, C. J.

On March 25, 1955 at 1:00 P.M., claimant, Donald Lindsey, was traveling in a southeasterly direction on Route No. 126 at a point approximately two miles east of Yorkville, Illinois. The weather was misty, but there was no snow on the highway. Route No. 126 is a two lane highway, twenty feet wide, with shoulders eight feet wide. Claimant approached a curve to the right, the end of which is a small hill or elevation. From this point, a driver cannot see the condition of the road ahead until he completes the curve at the top of the crest.

On the date and time in question a State highway truck, which had been spreading cinders, stopped on the highway, as a chain attached to the spreader had fallen off. The exact place where the truck stopped is the crux of this case, and the evidence in this regard is irreconcilable.

Walter Curtin, a witness to the accident, was driv-

ing his vehicle in the opposite direction, and testified that he was within 150 feet of the scene when the collision occurred.

Claimant Lindsey testified that when he first saw the State truck, it was parked about fifty feet from the crest of the hill. When he realized that the truck was stopped, he attempted to pass on the left, but was confronted by the Curtin car coming in the opposite direction. He then pulled back into his lane, and, before he could stop, smashed into the cinder spreader of the State truck.

Mr. Lindsey suffered severe injuries to his right and left leg, and incurred medical expenses in the amount of $5,812.18. He was out of work for five months. The State made no objections to the exhibits with reference to medical expenses, nor did the State controvert the seriousness of the injuries. There seems to be no dispute over the fact that the driver of the State truck stopped on the pavement for five or more minutes while his helper went to the rear to replace the chain on the spreader. There was room on the shoulder of the road to drive the truck entirely off of the traveled portion of the highway. Two witnesses stated there were no flashing lights, flares or flags in place to warn the traveling public. The two State employees stated the flasher was in operation. It is of interest to note the following testimony of Joe Purkye:

"We got strict instructions from our bosses that, if we had to stop a truck on the road, we had to pull on the side. If we cannot pull on the side, we have instructions to pull two wheels on the side, take a flag, go back a ways, and give a signal. We got orders a couple of times in case we stop on a highway to post red warning flags on the highway 200 feet in front of the truck and 200 feet in back of the truck. We have those flags in the truck."

From such evidence, the Court concludes that respondent was guilty of negligence in stopping on the

pavement, and thereafter failing to warn the traveling public of the dangerous condition.

Whether claimant was guilty of contributory negligence, so as to bar a recovery, is a more difficult question, as the evidence as to the location of the truck is in hopeless conflict.

If the truck was parked fifty feet from the crest of the hill, so that claimant would have been unaware of it until he made the turn at the top, there can be no question but what he is entitled to an award.

If the truck was parked 1,800 feet from the crest, claimant would have had ample time to recognize the obstacle in his path, and a failure to drive in a manner so that he could have stopped his car in time would make him guilty of contributory negligence.

In an examination of the abstract of evidence, we note from the testimony of Frank Marklein, the driver of the truck, that he identified the location of the scene of the accident from a photograph introduced in evidence as being 1,800 feet from the crest of the hill. On re-cross examination, he stated at page 42 of the abstract that he did not measure the distance as 1,800 feet, but someone did, and then stated "I thought it was 500 feet".

Joe Purkye, the helper on the truck, also located the position of the truck as being 1,800 feet from the crest of the hill, but at page 43 of the abstract, on direct examination, stated that the chain came off about seventeen or eighteen feet below the hill, and he told the boss, to stop, so that he could pick up the chain. In so stopping, the truck was a little bit sideways, two wheels were on the snow, and two wheels on the pavement.

Claimant's testimony was unequivocal that the truck was parked fifty feet from the crest of the hill.

The only disinterested witness in this case was Walter Curtin, a plumbing and heating contractor from LaSalle, Illinois, who saw the entire incident. He stated that he was driving in a northwesterly direction in the opposite lane of travel. The weather was misty. He was driving at about thirty miles an hour, and had his windshield wipers in operation.

He testified that the State truck had stopped with all four wheels on the pavement about fifty feet from the crest of the hill; that the blue light on the roof of the truck was not lit; that the flashers were not going, and that there were no flags or flares posted on the side of the road.

He stated that he saw a car, later identified as the Lindsey car, come around the curve traveling at about twenty-five miles per hour, that it attempted to pass the truck, but, when the driver saw the Curtin car, he pulled back into the right lane and hit the spreader.

At this point, we have the testimony of claimant, an interested witness, locating the truck fifty feet from the hill; the testimony of Mr. Curtin, a disinterested witness, locating the truck fifty feet from the hill; the testimony of Mr. Marklein, an interested witness, locating the truck 1,800 feet from the hill, who also stated he thought it was 500 feet; the testimony of Mr. Purkye, an interested witness, locating the truck 1,800 feet from the hill, who also stated that the chain fell off seventeen or eighteen feet from the hill, and who yelled at his boss to stop. One may inquire at this point whether the driver would have continued 1,800 feet before stopping to pick up the chain.

The further testimony of Mr. Curtin is helpful in resolving this conflict for at page 6 of the abstract he stated that he went over to the State truck and asked

the driver if he would move his truck up near the curve and *turn on his flasher*. He further stated that they moved the truck a little ways, and he then asked them to move it further, which they did.

It is understandable, when an accident occurs, that a certain amount of confusion exists, and that locating the position of the truck at a later date may be difficult. Since the truck was moved twice after the accident, it is apparent that the State employees could have been honestly mistaken in their testimony.

From an analysis of this testimony, we, therefore, conclude that the truck stopped about fifty feet from the hill, and that claimant, in the operation of his vehicle, was not guilty of contributory negligence.

Claimant further argues that he was placed in a position of danger without notice or warning of the condition, so that he should not be charged with contributory negligence for any error of judgment in choosing one of several alternate courses, which he believed would have avoided the collision.

Our courts have repeatedly held that a plaintiff is not to be charged with negligence if he, without fault, is confronted with a sudden emergency due to the negligence of another, and is obliged to instantly adopt a course of action in an effort to avoid injury.

> *Wolfe Mfg. Co.* vs. *Wilson*, 46 Ill. App. 381.
> *Junction Mining Co.* vs. *Ench*, 111 Ill. App. 346.

Reviewing some of the cases appearing in the Court of Claims Reports, we find that these cases turn on a question of fact. If contributory negligence was found, a claim was denied.

> *Porter* vs. *State of Illinois*, 21 C.C.R. 116.
> *Johnson* vs. *State of Illinois*, 21 C.C.R. 528.
> *Perry* vs. *State of Illinois*, 21 C.C.R. 311.

To the contrary, if the State was negligent, and claimant was found to be free from contributory negligence, an award was made.

Howard vs. State of Illinois, 21 C.C.R. 116.

The Court believes that the facts of this case are similar to the Howard case (supra), and that claimant has established his case by a preponderance of the evidence.

An award is, therefore, made to claimant, Donald Lindsey, in the amount of $7,500.00.